UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| BLC LEXINGTON SNF, LLC d/b/a | ) | |
| BROOKDALE RICHMOND PLACE SNF, | ) | |
| *et. al*., | ) | |
| | ) | Civil No.: 5:19-cv-00465-GFVT |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| PAUL PETERSEN, as Administratrix | ) | **ORDER** |
| of the Estate of | ) | |
| LEROY PETERSEN, deceased, | ) | |
| | ) | |
| Defendant. | | |

*** *** *** ***

Leroy Petersen, a former resident of the Brookdale Richmond Place SNF[1] in Lexington, Kentucky, signed an arbitration agreement through his son and power of attorney prior to moving into the facility.  Defendants allege that Mr. Petersen suffered physical and emotional injuries due to inadequate care resulting in an expedited, unnatural deterioration in his health, and eventually in his eventual death.  The parties now contest how and where the claims arising out of these alleged injuries are to be adjudicated.

**I**

On August 22, 2013, Leroy Petersen named his son, Paul Petersen, his true and lawful attorney-in-fact through a "Durable Power of Attorney" (POA).  [R. 1-3.]  On May 10, 2016, Paul signed an Admission Agreement as Leroy's son and POA in order for Leroy to be admitted

---

[1] Although Plaintiffs do not state what the abbreviation "SNF" represents, the Court found that "SNF" stands for Skill Nursing Facility.

to Brookdale Richmond Place SNF.  [R. 1 at 14.]  The nursing home is located in Lexington, Kentucky and operated by Plaintiffs.  *Id.*  Mr. Petersen signed an Admission Agreement with Plaintiffs that contained an arbitration clause, stating, "[a]ny and all claims or controversies arising out of, or in any way relating to, this Agreement or any of your stays at the Rehabilitation/Skilled Nursing Center … shall be submitted to binding arbitration … The parties to this Agreement further understand that a judge and/or jury will not decide their case." [R. 1 at 15.]  Leroy was a resident of Brookdale Richmond Place SNF from May 10, 2016 until January 28, 2019.  [R. 5-1 at 1.]

Two actions are currently pending.  On June 26, 2019, Paul Petersen filed suit in Fayette Circuit Court, Case No. 19-CI-02363, charging Plaintiffs with negligence, medical negligence, corporate negligence, and wrongful death.[2]  [R. 5-1 at 2.]  Soon thereafter, on November 26, the instant suit was filed wherein Plaintiffs move to compel Defendant to arbitrate his claims arising out of Leroy Peterson's residence at Brookdale Richmond Place SNF in accordance with the arbitration clause of the Admission Agreement Paul signed on Leroy's behalf.  [R. 1.]  Defendant answered with a Motion to Dismiss.  [R. 5.]  Thereafter, Plaintiffs filed a Motion to Compel Arbitration and to Enjoin Defendant [R. 9], in addition to their response objecting to the Motion to Dismiss [R. 6].  Because the Court finds that it has jurisdiction, no reason to abstain, and because Defendant's arguments regarding the agreement's enforceability and validity fail, the

---

[2] The state court suit is filed against BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF, American Retirement Corporation, Brookdale Senior Living, Inc., Brookdale Senior Living Communities, Inc., Benita B. Dickenson, Thomas T. Tackett, Randy Conforti, Ann M. Phillips, Jeff R. Stidham, all in their capacity as Administrators of  Brookdale Richmond Place SNF, and John Does 1 through 3, Unknown Defendants.  With the exception of administrators and Unknown Defendants, these parties are all Plaintiffs to this action.

Motion to Dismiss will be DENIED and Plaintiffs' Motion to Compel Arbitration will be GRANTED.

## II

### A

#### 1

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may assert lack of subject-matter jurisdiction as a defense.  Fed. R. Civ. P. 12(b)(1).  A motion to dismiss under Rule 12(b)(1) is different than a motion to dismiss under Rule 12(b)(6) because it challenges the Court's power to hear the case before it.  When jurisdiction is challenged under this rule, the burden is on the plaintiff to prove that jurisdiction exists.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  In answering this question, the Court is "empowered to resolve factual disputes" and need not presume that either parties' factual allegations are true.  *Id.*

#### 2

Federal Rule of Civil Procedure 12(b)(7) provides that a defendant may assert failure to join a party under Rule 19 as a defense.  Fed. R. Civ. P. 12(b)(7).  The relevant portion of Rule 19, which governs the joinder of parties, is reproduced below:

> A person…must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.  "[R]ule [19] is not to be applied in a rigid manner but should instead be governed by the practicalities of the individual case.  *Keweenaw Bay Indian Cmty. v. State*, 11 F.3d 1341, 1346 (6th Cir. 1993).

**3**

In a motion to dismiss pursuant to Rule 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief."  *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (*citing Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991)).  When reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Id*. (citation omitted).  Such a motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)).

The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  Moreover, the facts that are pled must rise to the level of plausibility, not just possibility – "facts that are merely consistent with a defendant's liability . . . stop[ ] short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  According to the Sixth Circuit, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

**B**

Defendants argue that this Court lacks subject matter jurisdiction, indispensable parties are not present, and even if jurisdiction is found, the Court should abstain from hearing the case.

The Court will consider these arguments in turn.

1

Both parties agree that the FAA does not independently constitute a grant of subject matter jurisdiction.  9 U.S.C. § 4; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.32 (1983).  Instead, the Plaintiff must prove circumstances exist to justify this Court's exercise of jurisdiction.

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (Federal Arbitration Act).  This Court has original "diversity" jurisdiction over all civil actions when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" parties who are "citizens of different States."  *See* 28 U.S.C. § 1332(a)(1).

Plaintiffs assert that complete diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000.  [R. 1 at 7.]  Defendant disagrees, arguing that the parties are not diverse, so this Court must dismiss the action for want of subject matter jurisdiction.[3]  [R. 5-1 at 14.]  In order for the Court to come to this conclusion, Defendant encourages the Court to "look through" the arbitration action, and beyond the parties listed on the pleadings, to consider the residence of the parties named in the state court action.  *Id*. at 15. If the Court did this, nursing home administrators Benita B. Dickenson, Thomas T. Tackett,

---

[3] Defendants do not assert that there is a Federal Question, nor is there a question as to whether the amount in controversy exceeds $75,000.  The only question raised concerning jurisdiction is whether the diversity of citizenship requirement has been satisfied.

Randy Conforti, Ann M. Phillips, and Jeff R. Stidham, who are parties to the state court case and Kentucky citizens, would destroy diversity jurisdiction. *Id*. at 16. Defendant alleges these administrators owed Mr. Petersen duties arising under the laws of Kentucky, are covered by the arbitration agreement, and should be considered for purposes of determining whether diversity of citizenship exists. *Id*. at 18–20. Why should the Court consider the residence of these non-parties? Defendants contend the Supreme Court's decision in *Vaden v. Discover Bank*, 556 U.S. 49 (2009) answers this question.

The former Chief Judge in this District confronted an identical legal issue. She summarized the Supreme Court's holding in *Vaden* as follows:

> In *Vaden,* Discover Bank sued a credit card holder in state court to recover past-due charges. The credit card holder filed a counterclaim, also asserting state-law claims. But Discover Bank believed these claims were preempted by federal law, and filed an action in federal district court to compel arbitration of the counterclaims. The Supreme Court held that the district court lacked jurisdiction because the federal issue arose within the context of the state-court counterclaim, and federal courts cannot consider counterclaims when assessing federal question jurisdiction. Accordingly, the Supreme Court directed district courts to "look through" the arbitration action and determine whether federal question jurisdiction exists based on the underlying state-court suit. *Id.* at 62.

*Brookdale Sr. Living Inc. v. Stacy*, 2014 WL 2807524, at *3 (E.D. Ky. June 20, 2014), *appeal docketed*, No. 14-5848 (6th Cir. July 14, 2014). As in this case, the defendant nursing home seeking dismissal in *Stacy,* argued that "the logic of *Vaden* applies with equal force in cases resting on diversity jurisdiction." *Id*. The Court recognized the argument was inapposite because "the Supreme Court limited its approval of the 'look through' doctrine to cases involving Federal Question Jurisdiction," specifically noting that the Supreme Court:

> approve[s] the "look through" approach *to this extent:* A federal court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law; in keeping with the well-pleaded complaint rule . . . a federal court may not entertain a § 4 petition based on the contents, actual or hypothetical, of a counterclaim.

*Id.* at (quoting *Vaden,* 556 U.S. at 62 (emphasis added)).

6

This Court has previously concluded, along with many other courts, that *Vaden* only applies to cases where Federal Question jurisdiction is asserted.  *See Richmond Health Facilities-Kenwood, LP v. Nichols*, 2014 WL 4063823, at *5 (E.D. Ky. Aug. 13, 2014); *Brookdale Senior Living, Inc. v. Caudill*, 2014 WL 3420783, at *4 (E.D. Ky. July 10, 2014); *Stacy*, 2014 WL 2807524, at *4;  *Credit Acceptance Corp. v. Davisson,* 644 F.Supp.2d 948, 953 (N.D. Ohio 2009) ("[T]he *Vaden* Court explicitly limited its holding to cases where the controversy underlying the § 4 petition involves *federal-question* jurisdiction"); *Northport Health Servs. of Arkansas, LLC v. Rutherford*, 605 F.3d 483, 490–91 (8th Cir. 2010) (finding the existence of diversity jurisdiction in an action to compel arbitration under the FAA is determined "by the citizenship of the parties named in the proceedings before the district court, plus any indispensable parties who must be joined pursuant to Rule 19.")  Because it is clear *Vaden* does not apply in diversity cases, Defendant's argument that the Court must "look through" and consider the residence of the administrators fails.

**2**

Defendant next argues for dismissal on the grounds that Plaintiffs failed to join the aforementioned administrators, who they deem to be necessary and indispensable parties to this action.  [R. 5-1 at 26.]  While the administrators might be necessary, they are not indispensable so dismissal would be inappropriate.

"Rule 19 of the Federal Rules of Civil Procedure establishes a three-step analysis for determining whether a case should proceed in the absence of a particular party."  *PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 200 (6th Cir. 2001).  First, the Court must determine whether the party is necessary under Rule 19(a).  *Id.*  A party's presence is determined to be necessary or "required" under that rule if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).  Second, if it is determined the party is necessary, the Court must consider whether the person is subject to service of process and if their joinder will deprive the court of subject matter jurisdiction.  *PaineWebber,* 276 F.3d at 200; Fed. R. Civ. P. 19(a).  Third, "if a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  In deciding, the Court is to consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  The action must only be dismissed if, after considering these factors, the Court concludes the non-joined person is indispensable under Rule 19(b).  *Id.*; *PaineWebber,* 276 F.3d at 200.

First, Defendant argues the administrators are necessary parties because complete relief cannot be granted in their absence.  [R. 5-1 at 28.]  According to Defendant, without the administrators' "presence … actions against them would be left outstanding from the underlying

controversy." *Id*. In *GGNSC Louisville Hillcreek, LLC v. Warner*, 2013 WL 6796421, at *3 (W.D. Ky. Dec. 19, 2013), the Court considered whether identically situated administrators were necessary under Rule 19(a) and concluded they were. That Court noted the claims against the administrator "and the [plaintiffs] are based on the same occurrence—negligence that resulted in injury to [the resident]." *Id*. As in this case, the arbitration agreement governed claims against the [plaintiffs] and the administrators." *Id*. Finally, the Court recognized if the federal court and the state court reached "different conclusions regarding whether the arbitration agreement is enforceable," that the administrator "would face inconsistent procedural remedies." *Id*. On this basis, the Court concluded the administrator was a necessary party. *Id*. This logic was later adopted and applied again in this District in *Stacy*, 2014 WL 2807524, at *783.

The second step is easy to resolve. The administrators are citizens of Kentucky, so their joinder would destroy subject matter jurisdiction. [R. 6 at 16 (Plaintiffs concede that the inclusion of the administrators in this action would destroy subject matter jurisdiction.).] For this reason, the Court must consider whether the administrators are indispensable parties. Fed. R. Civ. P. 19(a); *PaineWebber,* 276 F.3d at 200.

Third, the Court must consider whether the administrators are indispensable—whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Plaintiffs argue the administrators are not indispensable because the instant action only asks whether the arbitration agreement is enforceable. [R. 6 at 17.] Defendants disagree, arguing the administrators are indispensable because they are named "beneficiaries of the exact same [a]rbitration [a]greement as Plaintiffs, and because the actions of Plaintiffs and non-corporate entities are intertwined in Defendant's claims in the underlying controversy." [R. 5-1 at 29.]

As noted earlier, four factors guide Courts in their consideration of whether a party is indispensable. Fed. R. Civ. P. 19(b). First, the risk of having to proceed in two different forums is real, but the Sixth Circuit says this is a risk the defendant assumed when he decided to file the state court action instead of demanding arbitration under the agreement. *See PaineWebber,* 276 F.3d at 202. Second, "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *Id.* at 203 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp,* 460 U.S. 1, 20 (1983)). The state court could interpret the contested arbitration agreement differently, but the chances of this happening are slim. Thus, even if the Court proceeds without the administrators, the risk of prejudice is minimal and does not justify their being categorized as "indispensable."

As explained in *PaineWebber,* the second factor is less important when the potential prejudice discussed in the first step is small. *Id.* at 205. Third, while Defendants argue the administrators "acted in concert and contributed to Leroy Petersen's injuries, pain, and humiliation," they also concede that "a party's status as a joint tortfeasor does not make that person an indispensable party *per se.*" [R. 5-1 at 27–29 (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7–8 (1990).] *See also Warner*, 2013 WL 6796421, at *4. Finally, Plaintiffs would have an adequate remedy if the action were dismissed because they could proceed to arbitrate in state court. This does not mean, however, that they should be forced into utilizing the state court forum. As the Sixth Circuit explained in *PaineWebber*, "the potential existence of another forum does not, in and of itself, outweigh a plaintiff's right to the forum of his or her choice." *PaineWebber*, 276 F.3d at 205 (quoting *Local 670, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Int'l Union, United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 822 F.2d 613, 622 (6th Cir. 1987)).

In support of their position, Defendant argues the above factors, but also directs the Court to *Cytec Industries, Inc. v. Powell,* 630 F.Supp.2d 680 (N.D. W.Va. 2009).  In considering an identical indispensability argument, the *Stacy* Court had the opportunity to reflect on *Cytec*:

> In *Cytec Industries, Inc. v. Powell,* 630 F.Supp.2d 680 (N.D.W.Va. 2009), the court found that an alleged joint tortfeasor was indispensable to a suit to compel arbitration. The court explained that if the case were to proceed without the non-diverse party, the plaintiff in the state court would be forced to pursue its claims in two different forums, and could be subject to potentially conflicting interpretations over the validity of the arbitration agreement.  Drawing on Fourth Circuit precedent, the court found that the duplicative litigation and potentially inconsistent legal conclusions over the arbitration agreement created sufficient prejudice to deem the nonjoined party indispensable.  *Id.* at 686.

*Stacy*, 2014 WL 2807524, at *5.  As a district court opinion from West Virginia, *Cytec* has no precedential effect on this Court.  Additionally, the conclusion reached in *Cytec* directly contradicts the holdings of many courts in this District and beyond that, nursing home administrators named as defendants in parallel state court actions are not indispensable parties to the parallel section 4 arbitration action pending in federal court.  *See Nichols*, 2014 WL 4063823, at *5; *Stacy*, 2014 WL 2807524, at *6; *Warner*, 2013 WL 6796421, at *4.  As the *Stacy* Court noted, the Sixth Circuit, without specifically referencing the opinion, dismissed the logic employed in *Cytec:*

> Although we acknowledge the seriousness of [the defendant's] concerns, his characterization of the risks fails to take into account several important factors.  These considerations indicate that the potential prejudice to [the defendant] or [the nonjoined party] if this action proceeds without [the nonjoined party] is minimal.

> As an initial matter, the possibility of having to proceed simultaneously in both state and federal court is a direct result of [the defendant's] decision to file suit naming PaineWebber and [the nonjoined party] in state court rather than to demand arbitration under the Master Account Agreement.

> ...

11

Even if the parallel proceedings were not the result of [the defendant's] pending state court action, the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration.

...

[The possibility that] the federal and state courts will reach conflicting interpretations of the arbitration clauses does not present the degree of prejudice necessary to support a conclusion that [the nonjoined party] is an indispensable party. This possibility exists because [the defendant] chose to name both PaineWebber and [the nonjoined party] as defendants in the state court action.

*Stacy*, 2014 WL 2807524, at *6 (quoting *PaineWebber*, 276 F.3d at 202–06).

Finally, Plaintiffs note many circuit courts, including the Sixth Circuit, have similarly held that in the context of a federal action to compel arbitration, the individual defendants in the state court action were not indispensable parties to the federal action. [R. 6 at 19.] *See Northport*, 605 F.3d at 483 ("In the arbitration context, to our knowledge every circuit to consider the issue has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19 in a federal action to compel arbitration."); *Brown v. Pac. Life Ins. Co.,* 462 F.3d 384, 393–94 (5th Cir. 2006); *Am. Gen. Life & Acc. Ins. Co. v. Wood,* 429 F.3d 83, 92–93 (4th Cir. 2005); *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 945–46 (11th Cir. 1999); *Doctor's Assocs., Inc. v. Distajo,* 66 F.3d 438, 445–46 (2d Cir. 1995); *Bio-Analytical Servs., Inc. v. Edgewater Hosp., Inc.*, 565 F.2d 450, 453 & n.3 (7th Cir. 1977).

In light of Rule 19(b) and the voluminous case law, much of which is cited herein, the Court cannot find that the administrators are indispensable parties. As such, Defendant's motion will be denied on this point and the action may proceed without the administrators' presence.

**3**

In *Colorado River,* the Supreme Court recognized that federal courts should sometimes abstain from exercising jurisdiction over a case that "involves substantially the same issues and

12

substantially the same parties as a parallel case in state court." *Total Renal Care, Inc. v. Childers Oil Co.*, 743 F.Supp.2d 609, 612 (E.D. Ky. 2010) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, at 817 (1976)). However, because "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress," *Quackenbush v. Allstate Ins. Co.,* 517 U .S. 706, 716 (1996), abstention "'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" *Colorado River,* 424 U.S. at 813 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–189 (1959)); *see also Gray v. Bush*, 628 F.3d 779, 783 (6th Cir. 2010). For this reason, "[o]nly the 'clearest of justifications will support abstention.'" *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013) (quoting *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002)).

When determining whether abstention is appropriate under the *Colorado River* doctrine, district courts consider and weigh eight factors:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002) (quoting *PaineWebber*, 276 F.3d at 206.)

Plaintiffs concede that the first factor is inapplicable. In regard to the second factor, Defendant does not address how the federal forum would be less convenient to him or other parties as both courts are in Eastern Kentucky. [R. 6 at 25–26.] As such, these two factors weigh against abstention and in favor of exercising jurisdiction. *See PaineWebber*, 276 F.3d at 207 (holding where no property is at issue, the first factor supports exercising jurisdiction; and

13

when the State and Federal Courthouses are in the same city, the second factor also weighs

against abstention); *Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir. 1998) (same);

*Stacy*, 2014 WL 2807524 at \*785.

The third factor, which aims to avoid piecemeal litigation, requires analysis that is similar

to the one undertaken when determining whether parties are indispensable in as much as it asks

the Court to consider "whether there is a 'clear federal policy evinc[ing] . . . the avoidance of

piecemeal adjudication' found within the statutory scheme at issue." *Answers in Genesis of*

*Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (quoting

*Colorado River*, 424 U.S. 800, 819); *see also Stacy*, 2014 WL 2807524, at \*785.  No such policy

exists when considering a case under the Federal Arbitration Act.  *Id*. (citing *Dean Witter*

*Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) ("[T]he Arbitration Act requires district courts

to compel arbitration … when one of the parties files a motion to compel, even where the result

would be the possibly inefficient maintenance of separate proceedings in different forums.");

*Moses H. Cone,* 460 U.S. at 20 ("[R]elevant federal law *requires* piecemeal resolution when

necessary to give effect to an arbitration agreement.");  *GGNSC Vanceburg, LLC v. Taulbee*,

2013 WL 4041174, at \*4 (E.D. Ky. Aug. 7, 2013), appeal dismissed (Mar. 13, 2014) (same).

The fourth factor weighs in favor of abstention as the State Court case was filed five

months earlier.  The fifth factor weighs in favor of exercising jurisdiction because "the FAA

provides the source of law for interpreting the arbitration clause[]" in Mr. Petersen's agreement.

*PaineWebber*, 276 F.3d at 208 (citing *First Franklin Fin. Corp.*, 144 F.3d at 1365); *see also*

*Snap-on Tools Corp. v. Mason*, 18 F.3d 1261, 1266 (5th Cir. 1994) ("[I]n this federal case—

concerning *only* whether the case should be submitted to arbitration under § 4 of the FAA—

federal law provides the rule of decision on the merits.")  This factor is "less significant when the

14

state and federal courts have concurrent jurisdiction." *PaineWebber*, 276 F.3d at 208 (citing

*Romine*, 160 F.3d at 342.)

The sixth factor, whether the state court action may adequately protect the federal

plaintiff's rights, "presents the strongest basis for abstaining" because "[t]he FAA extends

Congress's legislative authority to the maximum extent permitted under the Commerce Clause,

and is therefore binding on state courts that interpret contracts involving interstate commerce."

*PaineWebber*, 276 F.3d at 208 (citing *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984); *see

also Nationstar Mortgage LLC v. Knox*, 351 F. App'x 844, 852 (5th Cir. 2009) ("[T]he state

court is a concurrent forum where motions to compel arbitration may be considered on the

merits, pursuant to 9 U.S.C. § 4.")

Factor seven is similar to the fourth factor in that it asks the Court to consider the relative

stage of the two proceedings.  The state court action is still in the pleading stage as Plaintiffs'

Complaint in this Court was filed shortly after their Answers to Defendant's Complaint were

served in the state court action.  [R. 6 at 29.]  In *PaineWebber*, the Sixth Circuit concluded that

this factor "point[ed] toward exercising jurisdiction" where "the state court action had not

progressed to any significant degree."  276 F.3d at 208.  The same conclusion is true here.

Under the eighth factor, the Court considers whether there is concurrent jurisdiction.

Here, concurrent jurisdiction exists between the state and federal courts, but "a congressional act

provides the governing law and expresses a preference for federal litigation."  Consequently, this

factor is insufficient to justify abstention.  *PaineWebber*, 276 F.3d at 208.

 "The decision to dismiss a federal action because of a parallel state-court action rests 'on

a careful balancing of the important factors as they apply in a given case, with the balance

heavily weighted in favor of the exercise of jurisdiction.'"  *Great Earth*, 288 F.3d at 886

15

(quoting *Moses*, 460 U.S. at 16).  In whole, factors four, six, and eight weigh in favor of abstention, but neither factors four or eight provide a strong reason to abstain.  In light of these circumstances, and the fact that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River*, 424 U.S. at 813, the Court will not abstain.

      This is the same conclusion reached by numerous other courts in this District who have confronted the same question in similar nursing home litigation.  *Caudill*, 2014 WL 3420783, at *6–7; *Stacy*, 2014 WL 2807524, at *8; *Brookdale Senior Living, Inc. v. Hibbard*, 2014 WL 2548117, at *2–4 (E.D. Ky. June 4, 2014); *GGNSC Vanceburg, LLC* v. *Hanley*, 2014 WL 1333204, at *5–8; *Taulbee,* 2013 WL 4041174, at *3–5; *see also Warner*, 2013 WL 6796421, at *4–6.  The Court is not aware of a case in this District that has decided this issue differently.

<h2 style="text-align:center">C</h2>

      Now, having addressed the threshold issues, the Court turns to Defendant's substantive and procedural attacks on the arbitration agreement.  By its very terms:

> Any and all claims or controversies arising out of, or in any way relating to, this Agreement or any of your stays at the Rehabilitation/Skilled Nursing Center, excluding any action for eviction, and including disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or voidability of this Agreement, whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law.

[R. 1-1 at 11–12.]  In bold print, the agreement states that by signing, "The parties to this Agreement further understand that a judge and/or jury will not decide their case."  *Id*. at 14.  It also notes that the undersigned acknowledges that he or she has been encouraged to discuss this Agreement with an attorney.  *Id*.

Defendant now moves to dismiss this action pursuant to Rule 12(b)(6), arguing the arbitration agreement (1) was signed by Paul Petersen in his capacity as Leroy's son, not his POA, (2) is void as lacking authority to bind the wrongful death beneficiaries, (3) does not evidence a contract involving interstate commerce, and (4) is unconscionable.  [R. 5-1 at 4–5.] Defendant argues these errors leave Plaintiffs with no chance of success, making dismissal appropriate.  *Id*.

**1**

First, Defendant argues that the arbitration agreement is invalid because the Admission Agreement, which contains the arbitration provision, was signed by Paul Petersen in his capacity as Leroy Petersen's son, and not his POA.  *Id*. at 8.  Provider representative, Brittany Walker filled out the section that states, "Resident Representative executes this Agreement in the capacity checked below" and placed an "X" in the box next to "Other" and wrote in "son."  *Id*. at 8.  However, as Plaintiffs point out, Defendant wrote "POA" next to his own signature just above the "Resident Representative Signature" line when he executed the Admission Agreement. [R. 6 at 7.]  Thus, it can be concluded from the Defendant's own handwriting that he signed the Agreement as Leroy's power of attorney and not just his son.  As power of attorney, Defendant was able to bind the principal to the terms of the arbitration agreement.

**2**

Next, Defendant argues that the wrongful death beneficiaries cannot be bound by the arbitration provision of the Admission Agreement.  [R. 5-1 at 77–79.]  Wrongful death claims in Kentucky are separate and independent claims which do not belong to a decedent or his estate. Instead, these claims arise upon the decedent's death and belong to enumerated statutory

17

beneficiaries.  *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 598–99 (Ky. 2012).  The

wrongful death statute provides:

> [W]henever the death of a person results from an injury inflicted by the negligence or
> wrongful act of another, damages may be recovered for the death from the person who
> caused it, or whose agent or servant caused it.  If the act was willful or the negligence
> gross, punitive damages may be recovered.  The action shall be prosecuted by the
> personal representative of the deceased . . . . The amount recovered . . . shall be for the
> benefit of the kindred of the deceased in the following order: . . . (b) If the deceased
> leaves [a husband] and children, then one-half (1/2) to [the husband] and the other one-
> half (1/2) to the children of the deceased.  (c) If the deceased leaves a child or children,
> but no [husband], then the whole to the child or children.

K.R.S. § 411.130.

Evidently, statutory beneficiaries may elect to arbitrate their own wrongful death

claims.  *See Richmond Health Facilities v. Nichols*, 811 F.3d 192, 199 (6th Cir. 2016).  The

question is whether the Defendant did so here.  Since ordinary principles of contract

interpretation apply, the Court begins by examining the plain language of the Admission

Agreement.  It states:

> I.  PARTIES. This Admission Agreement ("Agreement") is made this 10 day of May,
> 2016, by and between BLC Lexington SNF, LLC d/b/a, Brookdale Richmond Place a
> licensed Nursing Facility, … and Leroy Petersen (the "Resident", "you" or "your")
> and/or (Name of "Resident Representative") on behalf of Resident, in consideration of
> the mutual covenants contained in this Agreement.

[R. 1-1 at 1.]

> K. RESIDENT REPRESENATIVE – The Resident Representative may be any person
> who is (i) legally responsible for you (such as a court-appointed guardian, conservator or
> holder of a power of attorney), (ii) appointed by you, or (iii) a member of your immediate
> family.  This relationship/granted authority should be noted on this Signature Page of this
> Agreement.

*Id*. at 5.

Paul executed this Agreement in his capacity as Leroy's Resident Representative, noting

that he was Leroy's POA and son.  *Id*. at 17.  The Admission Agreement clearly provides that a

Resident Representative—which includes a person legally responsible for the resident—is a party to the contract.  Although Paul was acting on behalf of his father, he was a party to the agreement as defined by its plain language.  The Arbitration Provision within the Agreement provides, in relevant part:

> Any and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Provider . . . shall be submitted to binding arbitration . . . and shall not be filed in a court of law. **The parties to this Agreement further understand that a judge and/or jury will not decide their case**. **The undersigned acknowledges that he or she has been encouraged to discuss this Agreement with an attorney**.

*Id*. at 11–14 (emphasis in original).

Kentucky courts and federal courts within this district have repeatedly denied motions to compel arbitration of wrongful death claims when the wrongful death beneficiaries were not parties to the arbitration agreement.  *See, e.g., Richmond Health Facilities-Madison, L.P*, 2017 WL 3273381, at *6 (E.D. Ky. Aug. 1, 2017); *Paducah Health Facilities, L.P. v. Newberry*, 2015 WL 6780406, at *4 (Ky. Ct. App. Nov. 6, 2015).  But that is not the case here.  Leroy's son is a party to the valid arbitration agreement that is sufficiently broad to encompass the wrongful death claims related to Leroy's stays at the facility.  *See Nichols*, 811 F.3d at 198 (discussing *Marmet Health Center, Inc. v. Brown*, 565 U.S. 530, 530–32 (holding family members could agree to arbitration by signing agreements on behalf of nursing home residents)); *Golden Gate Nat'l Senior Care, LLC v. Jones*, 2016 WL 4744151 (E.D. Ky. Sept. 12, 2016) (finding resident's wife was compelled to arbitrate her loss of consortium and wrongful death claims when she signed arbitration agreement); *Diversicare Leasing Corp. v. Hall*, 2016 WL 10654078, *1–2 (E.D. Ky. Aug. 8, 2016) (holding wrongful death beneficiary signed arbitration agreement and was therefore a party to it, requiring her to arbitrate wrongful death claims).

19

Accordingly, Defendant's Motion to Dismiss on this ground is denied and Defendant will be compelled to arbitrate his wrongful death claim pursuant to his agreement with Plaintiffs.

**3**

Defendant's next argument for dismissal alleges that the arbitration agreement does not evidence a contract involving interstate commerce.  [R. 5-1 at 79–81.]  This Court disagrees. The FAA provides that "a contract evidencing a transaction *involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (emphasis added).  The phrase "involving commerce" has been interpreted as "the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citation omitted).  To this end, the Supreme Court has explained that the FAA provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause, [because] it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' that is, 'within the flow of interstate commerce.'"  *Id.* (citations omitted).

Defendant first argues that the arbitration agreement does not evidence a transaction involving interstate commerce, but is rather an agreement between Kentucky citizens and about services in Kentucky.  [R. 5-1 at 11.]  The arbitration agreement is only one piece of the larger Admissions Agreement.  As in *Stacy* and *Caudill*, the arbitration agreement "is a component of a larger contract that evidences a transaction involving interstate commerce."  *Caudill*, 2014 WL 3420783, at *9; (quoting *Stacy*, 2014 WL 2807524, at *14).  The ties to interstate commerce are obvious.

20

First, a nursing home's acceptance of Medicare or Medicaid has consistently been found sufficient to establish an arbitration agreement's ties to interstate commerce. *See Taulbee*, 2013 WL 4041174, at *10–11; *Hanley*, 2014 WL 1333204, at *8. Additionally, Kentucky Courts recognize that "[t]he food, medicine, and durable medical supplies that [the plaintiff nursing home facility] provide[s] must come from somewhere," and it is fair to bet some of these items are from out of state. *Warner*, 2013 WL 6796421, at *8; *Stacy*, 2014 WL 2807524, at *14. As in those cases, Defendants do not claim that the services and goods provided all came from inside the borders of Kentucky. In fact, Defendants argue that the Court should solely consider the arbitration agreement and disregard the fact that Plaintiffs engage in interstate commerce. [R. 5-1 at 11.]

Finally, other Courts consistently find such arbitration agreements enforceable under the FAA. In *Ping v. Beverly Enterprises, Inc.*, the Kentucky Supreme Court made clear that the FAA applies to arbitration agreements in nursing home contracts. 376 S.W.3d 581, 589–90 (Ky. 2012) (listing cases). This issue has also been frequently litigated in federal courts, where the Plaintiffs' view has been unanimously adopted. *See Caudill,* 2014 WL 3420783, at *9; *Stacy*, 2014 WL 2807524, at *13–14; *Hibbard*, 2014 WL 2548117, at *9–10; *Warner*, 2013 WL 6796421, at *7–8; *Taulbee*, 2013 WL 4041174, at *10–11; *Hanley*, 2014 WL 1333204, at *9–10.

**4**

Defendants next argue that the agreement is unconscionable. [R. 5-1 at 12.] Most of Defendant's arguments generally attack arbitration agreements in the healthcare context. He argues that the "Agreement is a part of the Brookdale Admission Agreement, likely presented to Paul Petersen with a lengthy stack of admissions paperwork, if presented at all," and that the admissions process is overwhelming. *Id*. Defendant further argues that there is a gross disparity

of power between the nursing home and the applicant, that such agreements are designed to "protect the healthcare conglomerate," that arbitration is expensive and fees are undisclosed, and the information contained under the section "Benefits of Arbitration" is false and deceptive. [R. 5-1 at 12–13.] As has been said in many courts in this district, these arguments are without merit.

The doctrine of unconscionability is a narrow exception to the general rule that "absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001). As described by the Kentucky Courts,

> The doctrine [of unconscionability] is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain.

*Id.* (citing *Louisville Bear Safety Serv., Inc. v. S. Cent. Bell Tel. Co.*, 571 S.W.2d 438, 439 (Ky. Ct. App. 1978)). Such an unconscionable contract has been characterized as "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Id.* (quoting *Louisville Bear Safety*, 571 S.W.2d at 439).

There are two forms of unconscionability. Procedural unconscionability "pertains to the process by which an agreement is reached." *Id.* at n.22. Such complaints might relate to the size of the print, unclear language, and concerns raised regarding contracts of adhesion. *Id.* "Substantive unconscionability 'refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent.'" *Id.* (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)). In the case at hand, Defendant argues that the agreement is both substantively and procedurally unconscionable. [R. 5-1 at 14.]

22

Despite Defendant's protestations to the contrary, it cannot be said that the arbitration agreement falls into this narrow category of cases which "no man in his senses … would make." The (1) provision has the conspicuous bold title, "AGREEMENT TO ARBITRATE," (2) is only four pages and in a normal size font, (3) contains no limitations on damages or causes of action that may be alleged, (4) does not shorten any applicable statutes of limitations, (5) is written in a manner that is easy to understand, and (6) adviss Mr. Petersen of his right to seek legal counsel concerning the agreement. [R. 1-1 at 11–14.]  *See Hanley*, 2014 WL 1333204, at *9 (discussing many of these factors).

Once again, this conclusion is supported by courts in this district which have consistently rejected similar arguments that arbitration agreements in the context of nursing home admissions are unconscionable.  *See Caudill*, 2014 WL 3420783, at *9–10; *Stacy*, 2014 WL 2807524, at *9–11; *Hibbard*, 2014 WL 2548117, at *5–8; *Warner*, 2013 WL 6796421, at *8–10; *Taulbee*, 2013 WL 4041174, at *9–11; *Hanley,* 2014 WL 1333204, at *9–10.[4]

**5**

Finally, Petersen argues that the Admission Agreement is, from an evidentiary standpoint, unauthenticated and, thus, there exists no admissible written contract as required to enforce such an agreement under 9 U.S.C. § 2.  The Court is unpersuaded.  Authentication is a threshold requirement.  To rely on a document, a party is required to show enough evidence to

---

[4]Instead of considering the defendant's substantive arguments, the *Taulbee* Court referred to the Supreme Court's recent discussion of the potential unconscionability of arbitration agreements in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011), explaining that "the grounds available under [Section 2 of the FAA] must not be construed to include a state's policy preference for procedures incompatible with arbitration."  *Taulbee*, 2013 WL 4041174, at *9–10. As the *Concepcion* Court put it, "[a]lthough § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives."  131 S. Ct. 1740, 1748 (2011).

"support a finding" that the document is what the party says it is.   Fed. R. Evid. 901(a).   To determine whether that burden is met, the Court may consider the agreement's appearance, contents, substance, and characteristics.   *See* Fed. R. Evid. 901(b)(4).

Plaintiffs have met that burden.   First, the title of the document is "Admission Agreement" and the provision at issue is labeled "AGREEMENT TO ARBITRATE."   [R. 1.] Next, the document is consistent throughout as every page has consistent page numbers, a consistent footer, and consistent dates.   *Preferred Care, Inc. v. Howell*, 2016 WL 4470746, at *5 (E.D. Ky. Aug. 19, 2016).   In addition, the agreement bears Leroy's name, as well as Paul's signature—which Paul does not contest.   *Id*.   Overall, this evidence is sufficient to support a finding that the document is what Plaintiffs say it is—Leroy Petersen's Admission Agreement to Brookdale Richmond Place.   *Id*. at 5–6.

Defendant has neither alleged nor provided evidence that the signature contained on the Agreement is not his, and the Court declines to afford him relief on this ground.   *See Hanley*, 2014 WL 1333204 at *8 ("In urging dismissal, Defendant maintains that [the agreement] has not been properly authenticated.   This assertion is, at best, confusing and, at worst, disingenuous. Defendant, who was herself present during the admissions process, has not alleged in any pleading or affidavit that the mark contained on the arbitration agreement is not representative of her signature.").   Since Defendant has provided no evidence challenging the authenticity of the document, his argument in this regard is without merit.

### D

In the end, not a single argument presented by Petersen in support of his Motion to Dismiss succeeds, and the Motion must be denied.   As a result, the Court considers the remaining factors to compel arbitration.   When analyzing a motion to compel, the Court

considers four issues: (1) whether the parties agreed to arbitrate; (2) the scope of the arbitration

agreement at issue; (3) if federal statutory claims are asserted, whether Congress intended those

claims to be nonarbitrable; and (4) if some, but not all, of the claims are subject to arbitration,

whether to stay the remainder of the proceedings pending arbitration. *See, e.g., Stout v. J.D.

Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). The Court's discussion above regarding Petersen's

Motion to Dismiss demonstrates the parties did, indeed, agree to enter a binding arbitration

agreement. And the third factor regarding federal statutory claims is irrelevant, because Petersen

asserts no such claims. [*See* R. 1.]

Having determined Defendant entered into a valid agreement to arbitrate, the Court must

also determine whether all of Defendant's claims fall within its scope. In this case, the

arbitration clause is broad, covering all disputes arising out of or in any way relating to the

Admission Agreement or any of Leroy's stays at the facility. In addition to his wrongful death

claim, Defendant claims Plaintiffs were negligent in caring for Leroy during his stay, and

committed acts of corporate and medical negligence in treating Leroy's physical ailments. All of

these allegations concern alleged actions that fall within the scope of the arbitration agreement.

Accordingly, all of the Defendant's claims must be submitted to arbitration.

## E

Finally, the Court must determine whether Defendant should be enjoined from pursuing

his parallel action in state court. "Although the FAA requires courts to stay their own

proceedings where the issues to be litigated are subject to an agreement to arbitrate, it does not

specifically authorize federal courts to stay proceedings pending in state courts." *Great Earth*,

288 F.3d at 893 (internal citation omitted). Pursuant to the more general provisions of the Anti-

Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in

a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283 (2018).

In this case, an injunction "properly falls within the exception for injunctions 'necessary to protect or effectuate' the Court's judgments." *Great Earth*, 288 F.3d at 894.  An injunction is necessary to prevent Defendant from pursuing his claims in the alternative forum and, in the process, circumventing the parties' agreement to arbitrate.  Accordingly, Defendant will be enjoined from proceeding with the pending parallel state court action.

### III

The Court has reviewed the many arguments challenging this Court's jurisdiction, whether or not the proper parties are present for this case to proceed, and also the substance of the arbitration agreement itself.  The Court has been presented with no compelling reason as to why the arbitration should not proceed.  In addition to being consistent with the apparent wishes of Mr. Petersen, it is also consistent with the purposes behind the Federal Arbitration Act, which governs in this case.  *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (quoting *Volt*, 489 U.S., at 478, 109 S.Ct. 1248) ("The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'")

Accordingly, the Court hereby **ORDERS** as follows:

1. Defendant Paul Petersen's Motion to Dismiss [R. 5] is **DENIED**;

2. Plaintiff's Motion to Compel Arbitration [R. 9] is **GRANTED**;

3. Defendant is hereby **COMPELLED** to resolve his claims in arbitration and **ENJOINED** from proceeding with his parallel action in state court;

4. Pursuant to 9 U.S.C. § 3, further proceedings in this matter are **STAYED** pending arbitration; and

26

    5.   The state court matter, insofar as it relates to the present claims between

Defendant and Plaintiffs, is **STAYED** pending arbitration.

    This the 12th day of June, 2020.

Gregory F. Van Tatenhove
United States District Judge